IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GILBERT M. ESQUIBEL,

    Plaintiff,

vs.                                      Civil No. 97-1333 LH/WWD

KENNETH S. APFEL,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
### Proposed Findings

    1.  This matter comes before the Court upon Plaintiff's Motion to Reverse, filed July 10, 1998 [9-1].  Plaintiff also filed a Supplemental Motion for Remand on August 18, 1998 [12-1].  The Commissioner denied Plaintiff's request for Social Security Disability Insurance ("SSDI") and Supplemental Security Income ("SSI") benefits.  Plaintiff was fifty-four years old at the time of the administrative hearing, which was held on March 30, 1996.  He alleges a disability as of January 10, 1994, due to back and knee problems, depression, hearing problems, diabetes and education.  Plaintiff has worked in the past as a general labor foreman and as a custodian.

    2.  After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied the applications, concluding that Mr. Esquibel was capable of medium exertion level work, and therefore was not disabled.  The Appeals Council denied Plaintiff's request for review of the ALJ's decision, thus the ALJ's decision is the final decision of the Commissioner.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

    3.  The standard of review in social security appeals is whether the Commissioner's final

decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

    4. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) that the ALJ erroneously adopted or relied on Dr. Diskant's evaluation concerning the left knee torn ligament because Dr. Diskant was not unbiased as a workers' compensation physician; (2) that the ALJ erred in the credibility analysis and (3) that the ALJ erred in discounting Plaintiff's hearing loss as a severe impairment because he had been able to work with the loss, and that the hearing loss is a significant nonexertional impairment which precluded the ALJ's use of the grids.

    5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §§ 423 (d)(1)(A)) & 1382c(a)(3)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

    6. At the first four levels of the evaluation, the claimant must show: (1) that he is not working; (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he is unable to perform work done

in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

7. The first four steps of the sequential evaluation process are not at issue in this case. At step five, the burden shifts to the Commissioner to show that the claimant has a residual functional capacity ("RFC") to do work in the national economy other than past relevant work. Thompson at 1487 (citations omitted). The Medical-Vocational Guidelines ("grids") are used at this step to determine whether disability exists. 20 C.F.R. Part 404, Subpt. P, App. 2. The grids reflect the existence of jobs in the national economy at various residual functional capacity ("RFC") levels by incorporating administrative notice of occupational publications and studies. 20 C.F.R. §§404.1566(d); 416.966(d). This aids the Commissioner in determining what specific job types in the national economy the claimant can perform. The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment. 20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

8. Mr. Esquibel was injured at work in January 1994 when a heavy object fell and struck his upper back, although he claims to have had back problems as far back as 1990 or 1991. Tr. at 39, 163. He complains of a frequently occurring sharp, stabbing pain in his back which spreads to his neck. Tr. at 45, 72. He gets relief in about an hour after taking prescribed anti-inflammatory medication, but the medication does make him drowsy. Tr. at 43, 72. He also gets relief from a TENS unit. Tr.at 41-42, 65. At the hearing, Plaintiff stated that he sometimes has trouble sleeping because of back pain, but not always. Tr. at 51-52. Mr. Esquibel also told the ALJ that he's had a hearing loss for the past 14 or 15 years, but that it has worsened, more so in the left ear. Tr. at 49.

9. Plaintiff had an arthroscopy performed on his right knee to repair torn cartilage shortly after the 1994 injury, and complains of pain in that knee when kneeling and at times when walking or standing. Tr. at 55, 60-61. He also complains that on occasion, his left knee dislocates or "pop out" when walking. Tr. at 56. Plaintiff suggests that some confusion exists over whether the left knee injury occurred in the 1994 work-related injury, although he stated that he "never did tell the doctor [whom he saw after the injury]" about the left knee until several months later. See discussion, below. Plaintiff walks without assistance. Although he stated that the right knee causes him more discomfort, he also stated that the problem in his left knee limits him from certain activities such as fishing and cutting wood. Tr. at 63.

10. Mr. Esquibel has Type II diabetes mellitus, which the record shows, and the ALJ noted, is well-controlled with diet. Tr. at 17-18, 57, 253. He also complains of dizziness which occurs daily when he rises from a bed or couch where he has been lying for a period of time, and which lasts for about 15 minutes. Tr. at 70-71.[1]

11. Plaintiff spends his day "walking a little outside," watching television, and doing some light cooking. He states that he is able to walk a couple of blocks, sit for 30 minutes at a time, and lift no more than 30 pounds. Tr. at 46, 73. An evaluation by Dr. Barry Diskant dated October 1994 states that Plaintiff reported an ability to sit for 1 to 2 hours, walk more than a mile and drive for about 45 minutes without stopping. Tr. at 233.

**First Alleged Error**

12. Plaintiff first contends that the ALJ erroneously adopted or relied on Dr. Diskant's

---

[1] I omit a discussion of any other allegations of impairments which are not argued in Plaintiff's brief as grounds for error.

4

evaluation concerning the left knee torn ligament because Dr. Diskant was not unbiased as a workers' compensation physician. However, whether or not the left knee was included in Dr. Diskant's initial October 1994 evaluation is immaterial. The etiology of the left knee injury is not part of the substantive inquiry regarding disability, although it may have an impact on Plaintiff's credibility, as Defendant suggests.[2] Therefore, allegations of Dr. Diskant's bias due to the fact that he deals with workers' compensation claims is irrelevant here where the causation issue is irrelevant. The question for me to consider is whether the record in general supports the ALJ's finding that the impairment is not disabling under the regulations. I find that it does.

13. I have reviewed the medical reports and examinations from doctors who treated the Plaintiff, including Dr. Maestas (treating physician), Dr. Rothman (treating orthopedic specialist) and Dr. Diskant. All opined that Plaintiff was able to be released for work. See Tr. at 180, 218; Kelley v. Chater, 62 F.3d 335, 338 (10th Cir. 1995) (ALJ may look to see whether doctor has opined that claimant can perform work). The RFC assessment Dr. Diskant requested in November 1994 reflected that Plaintiff has the ability to do a medium range of physical work, as defined by the Dictionary of Occupational Titles. Tr. at 197. The RFC stated that Mr. Esquibel could work for 8 hours, with occasional tolerance for sitting (up to 45 minute intervals of continuous sitting); 15 minutes of static standing; up to 10 minute intervals of continuous

---

[2] On a visit to Dr. Maestas, his treating physician, Plaintiff reported that he sustained the "twisting type" injury to his left knee "while stepping over a child." Tr. at 160. Yet, when he saw Dr. Diskant in February 1995, he claimed that the left knee was injured in the 1994 work-related accident. Tr. at 224. The issue may be important to Plaintiff in the matter of insurance coverage, see Tr. at 62, 70, 71, but not the present inquiry of whether the injury is itself disabling.

walking; and that he could lift 53 pounds occasionally and 37 pounds frequently.[3] Id. Dr. Diskant noted that Plaintiff could return to work with restrictions allowed for pushing, pulling and lifting.[4]

14.  Mr. Esquibel went through physical therapy during two periods of time, one starting in May 1994, and the other in October 1994.[5]  The therapist's notes show that Plaintiff progressed well and his symptoms continued to improve with the sessions to where he experienced residual discomfort at nightime. Tr. at 184-185; 191-92.

15.  In his decision, the ALJ noted the evidence, some of which I have mentioned above, which supported his conclusion that Plaintiff has the RFC to perform medium level work. Tr. at 18-20.  Thus, I find that the ALJ did not erroneously adopt or rely on Dr. Diskant's evaluation concerning the left knee torn ligament because substantial evidence in the record supported the RFC determination.

**Second Alleged Error**

---

[3] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds.  20 C.F.R. § 404.1567(c); SSR 83-10.

[4] In June 1995, a Dr. Espinoza (not a treating physician) conducted an RFC in which it was noted that Plaintiff was "main informant for this evaluation." Tr. at 237.  According to this evaluation, Plaintiff had functional limitations which precluded him from working a full 8-hour day. Tr. at 241.  I do not consider this in my review, first, because Plaintiff has not raised this in his brief, and second, because the ALJ would not necessarily be incorrect to disregard this evidence, looking at all the other objective evidence in the record. Castellano v. Sec. of Health & Hum. Serv., 26 F.3d 1027, 1029 (10th Cir. 1994) (it is clearly within the ALJ's authority to reject a physician's opinions which are unsupported by the objective evidence of record).

[5] After his right knee problem resolved, see Tr. at 167, Plaintiff's back problem worsened, and he was referred to physical therapy a second time. Tr. at 183-86.  At one point, although the reason is not clear, Plaintiff stated to the therapist that his doctor told him to "stop physical therapy." Tr. at 183.

16. Plaintiff next alleges that the ALJ erred in the credibility analysis. Plaintiff offers little in the way of argument except to say that the ALJ assumed Plaintiff was not credible because he complained "of pain at therapy unreasonably." While the ALJ's credibility analysis was not laid out in a discrete section of the decision, it nevertheless was based on the correct legal standard, Tr. at 22, and relied on substantial evidence in the record. The ALJ carefully went through the available medical evidence, accorded the proper weight to these findings, Tr. at 23, and determined that Plaintiff's subjective testimony was not consistent with the evidence. See Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988). He also concluded that Plaintiff was not credible as to the severity of his symptoms. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990) (medical records must be consistent with the nonmedical testimony as to the severity of the pain).

17. The fact that Plaintiff experiences some pain is not determinative. The existence of pain is not enough to support a finding of disability. Brown v. Bowen, 801 F.2d 361, 362 (10th Cir. 1986). Rather, the pain (or other nonexertional symptom) must be disabling enough to preclude substantial gainful employment. Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988). The ALJ did not err in his decision that it was not.

**Third Alleged Error**

18. Last, Plaintiff claims that the ALJ erred in discounting Plaintiff's hearing loss as a severe impairment because he had been able to work with the loss, and that the hearing loss is a significant nonexertional impairment which precluded the ALJ's use of the grids. He further contends that because his hearing has allegedly worsened, a vocational expert ("VE") should have been consulted.

19. However, a VE consult is not necessary unless the impairment is significant enough to preclude use of the grids in the first place. Cmp.Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (if the claimant's nonexertional limitations are significant enough to reduce further her work capacity, the ALJ may not rely upon the grids but instead must give full consideration to all relevant facts, including vocational expert testimony if necessary, in determining whether the claimant is disabled). An impairment is significant only to the extent that it limits the range of jobs available to the claimant. See Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988) (citation omitted) (mere presence of a nonexertional impairment does not automatically preclude reliance on the grids).

20. Here, without offering any argument based on evidence in the record, Plaintiff assumes that the hearing loss significantly limits Plaintiff's range of jobs. However, the profound hearing loss, which Plaintiff has had since around 1986, has not impeded his ability to work at all. Since it must be established that the nonexertional limitation is significant in order to preclude use of the grids, it was not incorrect for the ALJ to point this out. Tr. at 23. Also, it was the Plaintiff's burden to prove that his hearing loss was significant or that it significantly interfered with his ability to work. See Hawkins v. Chater, 113 F.3d 1162 (10th Cir.1997).

21. Plaintiff has mild sensori-neural loss in his right ear, and a severe sensori-neural hearing loss in his left ear. Speech discrimination for conversational speech with no visual cues was 76% for the left ear, but 92% for the right. Tr. at 243. He has a hearing acuity at 45 decibels in the right ear and at 85 decibels in the left. Tr. at 277. There is no evidence from the record that the condition has significantly deteriorated. A hearing aid was recommended as providing "significant benefit" to Plaintiff, but he has not pursued the option. Pacheco v. Sullivan, 931 F.2d

695, 698 (10th Cir. 1991); Teter v. Heckler, 775 F.2d 1104, 1107 (10th Cir. 1985) (an impairment that can reasonably be remedied or controlled by treatment cannot support a finding of disability). Although not noted in written form by the ALJ, I noted upon reviewing the hearing transcript that Plaintiff exhibited no difficulty in hearing questions put to him or in responding to questions.

22.  Because the record does not indicate that Plaintiff's hearing loss significantly limits his ability to work, the ALJ did not err in discounting the impairment, nor was it necessary to enlist the services of a VE.

**Supplemental Motion**

23.  Plaintiff's supplemental motion seeks to add as evidence to the present application a report by a Dr. Schreiber which was generated at the request of the Commissioner during consideration of a subsequent application for benefits which was granted.  Plaintiff suggests that the onset date as listed in the report (April 1997, the date of the consultation), should be retroactively applied so as to support a finding that Plaintiff was disabled in the earlier application.[6]

24.  What Plaintiff asks for is contrary to law as well as unfounded in the evidence in the application which is presently under this Court's review.  The report is not relevant to the time period for the present application because it concerns subsequent deterioration of a previously non-disabling condition.  Hargis v. Sullivan, 945 F.2d 1482, 1493 (10th Cir. 1991).  Where such

---

[6] According to the briefs, the report contains information relating to Plaintiff's diabetic impairment.  For the present application, the ALJ found, given the evidence during the relevant period, that Plaintiff's diabetes did not have more than a "minimal impact" on his ability to work. Tr. at 18.

evidence becomes available, claimant can then file a new application.  See Pace v. Shalala, Text in WL, 117531 *6 (10th Cir. N.M. 1994); Johnson v. Heckler, 767 F.2d 180, 183 (5th Cir. 1985). Plaintiff did so here, and the application was apparently approved for benefits.

25.  Even if the evidence is *not* used for the purpose of showing subsequent deterioration, Plaintiff's motion still has no merit, because a retrospective diagnosis without evidence of actual disability is insufficient.  Potter v. Sec'y of Health & Human Serv., 905 F.2d 1346, 1348 (10th Cir. 1990).  The findings here do not indicate that the ALJ was incorrect in his findings that Plaintiff is not disabled.  Therefore, the report as a retrospective diagnosis has no relevance to the present application.

26.  In sum, I find that (1) the ALJ did not err in his consideration of Dr. Diskant's evaluation concerning the left knee torn ligament; (2) the ALJ did not err in the credibility analysis; and (3) the ALJ did not err in discounting Plaintiff's hearing loss as a severe impairment. In addition, Plaintiff's supplemental motion should be denied.

## Recommendation

I recommend that Plaintiff's Motion to Reverse **[9-1]** be denied, and that Plaintiff's Supplemental Motion for Remand **[12-1]** be denied and this cause of action dismissed with prejudice.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE